UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEANDRE VICK,

        Petitioner,

v.                                                 Case No. 2:07-cv-38
                                                 HON. ROBERT HOLMES BELL

LINDA METRISH,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Deandre Vick filed this petition for writ of habeas corpus challenging the validity of his conviction for first degree murder, felony firearm, carrying a concealed weapon in an automobile, and felon in possession of a firearm. Petitioner was convicted by jury and was sentenced on July 23, 2002, to life imprisonment on the murder conviction, two years on the felony firearm conviction, and two to seven and one-half years on the concealed weapon and felon in possession convictions.

Petitioner shot and killed Lebert Talley. Petitioner maintained at trial that he shot the victim in self defense. Petitioner argues that his convictions were obtained in violation of his federal rights. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner has raised the following issues in his petition:

I. Petitioner was denied his state and federal rights to a fair trial by repeated instances of prosecutorial misconduct including deliberate elicitation of testimony regarding alleged threats to a witness with no evidence linking the alleged threats to petitioner and statements before the jury about a witness invoking his Fifth Amendment right against self-incrimination.

II. Defendant was denied his state and federal constitutional rights to due process, a fair trial and to confront the witnesses against him by the prosecution's failure to use due diligence to produce, endorse res geste witnesses and by its destruction and loss of key evidence.

III. The trial court should have suppressed the detective's statement as to defendant's alleged admission, where the police failed to make an audio recording of the interrogation, thus violating his state and federal rights to due process.

IV. The court erred by failing to accept defendant's plea and sentence bargain, which was never withdrawn by the prosecutor denying defendant his state and federal rights to due process.

V. Defendant Deandre Vick is entitled to a new trial based upon newly discovered evidence, where said evidence would render a different result probably on retrial.

VI. Defendant was denied a fair trial under the due process clause of the United States constitution where the prosecution knowingly used perjured testimony at defendant's trial.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of

the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is

whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner asserts that the trial court should have suppressed his statement to police because no audio recording was made. Petitioner does not have a constitutional right to have statements he made to police officers recorded. The Michigan Court of Appeals rejected this claim finding no merit under the Michigan Constitution or otherwise for a requirement that police officers must record statements. The fact that petitioner may have disputed the testimony from the detective presented an evidentiary matter that petitioner had the opportunity to raise at trial. Petitioner cannot establish that his due process rights were violated based upon his asserted claim that his statement should have been audio recorded. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that it was error for the court not to accept his plea agreement when the prosecutor revoked the plea offer before petitioner accepted the plea bargain. The Michigan Court of Appeals rejected this claim stating:

> Before the jury was given its preliminary instructions, the prosecutor placed on the record the fact that it had offered defendant the opportunity of a plea bargain, but defendant had rejected the offers. Defendant's trial counsel replied that she had communicated the plea offers to defendant, but that he had chosen to reject them at that time, although counsel was going to continue talking to defendant on the issue. The issue was later revisited just before closing arguments when the defense stated on the record that after trial had commenced, defendant had attempted to accept one of the plea offers, but the prosecutor informed defendant that any offers to plea bargain were no longer available. After a brief exchange on the issue, the trial court found that the prosecutor had rescinded the offer of a plea bargain before defendant attempted to accept it, and moved on to other matters.
>
> Defendant now argues that the trial court committed error requiring reversal when it found that the offer had been revoked before it was accepted, contending that he is entitled to specific performance of the plea bargain as it was originally offered. He further argues that failure to specifically enforce the offer would violate his constitutional rights.
>
> In the constitutional context, specific performance of "pledges of public faith" are not required, but we must strive to formulate a remedy to "*cure[] the defendant's detrimental reliance*" on the pledge. *People v Wyngaard*, 462 Mich 659, 665-667; 614 NW2d 143 (2000), citing *People v Gallego*, 430 Mich 443, 452-456; 424 NW2d 470 (1988) (emphasis in original). Where the defendant was not seeking specific performance of a plea agreement because he had not actually pleaded or performed on any portion of the plea agreement, the prosecutor was not bound by a plea bargain rescinded after the defendant had accepted but before the defendant had actually pleaded or in any way performed under the plea agreement. *People v Heiler*, 79 Mich App 714, 719-721; 262 NW2d 890 (1977). Here, defendant did nothing in reliance on any offers of a plea bargain made by the prosecutor. Therefore, the trial court did not err in refusing to enforce the plea offer.

"A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." *Mabry v. Johnson*, 467 U.S. 504, 507 (1984). Petitioner never accepted the plea agreement while the offer was pending. The court found that the prosecutor revoked the agreement after the trial had begun. Petitioner has no constitutional right to enforce a properly revoked agreement that was never timely accepted by petitioner. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Respondent argues that the remaining claims are procedurally defaulted. When a state-law default prevents further state consideration of a federal issue, the federal courts are ordinarily precluded from considering that issue on habeas corpus review. *See Ylst v. Nunemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). The Sixth Circuit applies a four-part test to determine whether a claim is procedurally defaulted: (1) the court must first determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the state procedural rule; (3) the default must be an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) if the foregoing are met, the petitioner must demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001). There may be an "exceptional case in which exorbitant application of a

generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 122 S.Ct. 877, 878 ( 2002). A petitioner may also excuse a default by making a colorable claim of innocence; that is, he has shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray v. Carrier*, 477 U.S. 478, 495 (1986)). This exception is reserved for a very narrow class of cases, based on a claim of "new reliable evidence." *Schlup*, 513 U.S. at 315, 324.

Petitioner raised several acts of prosecutorial misconduct. The Michigan Court of Appeals reviewed these claims for plain error because petitioner failed to preserve the claims for appeal by objecting to the asserted improper conduct at trial. Even when the state court reviews the issue under a manifest injustice standard or to prevent a miscarriage of justice, petitioner's failure to object is still considered a procedural default. *See Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989); *see also Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998), *cert. denied*, 528 U.S. 842 (1999) (citing *Harris*, 489 U.S. at 264 n.10). The Michigan Court of Appeals rejected these claims explaining:

> Defendant next argues that he was denied a fair trial by repeated instances of prosecutorial misconduct. We review defendant's unpreserved claims of prosecutorial misconduct for whether plain error occurred resulting in the conviction of an innocent man or whether the prosecutor's conduct seriously affected the sanctity of the judicial proceedings. *People v Ackerman*, 257 Mich App. 434, 448-449; 669 NW 2d 818 (2003). While the prosecutor may not argue facts not in evidence, the prosecutor is free to argue the evidence introduced at trial and all reasonable inferences based on the evidence. *People v Schutte*, 240 Mich App 713, 721; 613 NW2d 370 (2000), citing *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995).
>
> Defendant states a litany of questions and arguments articulated by the prosecutor that defendant contends were actually the testimony of the prosecutor because they were based on facts not in evidence. One of defendant's main contentions on this issue is that the prosecutor's

arguments that defendant had been threatening witnesses was impermissible, primarily because there was no evidence produced to connect the threats to defendant or to establish that the threats were made to influence testimony.

The prosecutor's words "must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *Schutte, supra* at 721, citing *People v Jansson*, 116 Mich App 674, 693, 323 NW2d 508 (1982). Further, a prosecutor's good faith efforts to admit evidence responsive to issues raised by the defense and otherwise relevant to the issues raised at trial do not constitute misconduct. *Ackerman, supra* at 448-450. Here, defendant fails to note that all of the prosecutor's arguments were based on reasonable inferences drawn from evidence introduced at trial, and that the prosecutor's questions were all related to facts at issue in the case. Additionally, defendant does not adequately develop his contention that introduction of evidence that witnesses were being threatened violated MRE 404(b). An appellant "may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Regardless, we find no error requiring reversal.

One of defendant's arguments, however, does merit brief discussion. During the course of the trial, the defense questioned a detective at length about what witnesses had been subpoenaed, and about why one witness in particular was not testifying. In response to one of these questions, the prosecutor objected, stating during her objection, that one of the witnesses to the incident, into whose absence the defendant has been inquiring, had not been called to testify because he had invoked his right against self-incrimination. Defendant is correct when he points out that the prosecutor may not call a witness that the prosecutor knows will assert his or her right against self-incrimination. *People v Giacalone*, 399 Mich 642, 645; 250 NW 2d 492 (1977). However, "[o]therwise improper prosecutorial remarks generally do not require reversal if they are responsive to issues raised by defense counsel." *Shutte, supra* at 721. Defendant fails to demonstrate how the prosecutor's objection constituted error in light of defense counsel's questioning.

Because no errors were found with regard to defendant's claims of prosecutorial misconduct, defendant's argument that the cumulative errors deprived him of a fair trial is without merit. *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

> Defendant next argues that his constitutional rights were violated by the prosecution's failure to produce certain witnesses for trial, and by the prosecution's suppression of what defendant contends were two key pieces of evidence necessary to his defense. As it relates to the missing witnesses, defendant failed to preserve his claim by bringing a motion for an evidentiary hearing or motion for new trial on this issue. *People v Dixon*, 217 Mich App 400, 409; 552 NW2d 663 (1996). We decline to evaluate defendant's claim without the appropriate evidentiary record. In any event, on the record before us, we find no error.
>
> Defendant's claims that the police suppressed evidence also must fail. Defendant fails to explain how the personal notes, discarded after they were incorporated into an official report, of a detective not called to testify at trial, were actually evidence. Further, defendant claims that the police suppressed evidence by failing to record defendant's statements or willfully erasing part of an audiotape of defendant's statements to police. The loss of evidence that would be potentially useful to the formulation of a defense does not constitute a due process violation unless the destruction of the evidence was the result of bad faith on the part of the state body in custody of the evidence. *People v Leigh*, 182 Mich App 96, 98; 451 NW2d 512 (1989). Additionally, this Court will not hold that evidence has been suppressed where there is nothing but the defendant's assertion to prove that the evidence existed in the first place. See *People v Miller*, 51 Mich App 117, 214 NW2d 566 (1973). Here, defendant presented no evidence of bad faith, and because the unrebutted testimony of the interrogating officer was that the tape recorder malfunctioned, there is no evidence that the tape that defendant contends was improperly suppressed ever existed. Defendant's claims must fail.

For the reasons stated by the Michigan Court of Appeals, petitioner cannot establish cause or prejudice for his procedural default of these issues. Moreover, the decision of the Michigan Court of Appeals was not unreasonable.

Petitioner's remaining claims were rejected by the Michigan courts when he presented a motion for relief from judgment. The Michigan Supreme Court denied leave to appeal "because defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." Under MCR 6.508(D)(2) and (3), a defendant may not collaterally attack a conviction based upon

claims that were decided against him in a prior appeal or that could have been raised on direct appeal. For claims that could have been raised, the defendant is entitled to relief only if he can establish "good cause" for failing to raise the grounds on appeal and "actual prejudice," as shown by a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." MCR 6.508(D)(3)(a)-(b). In assessing how "firmly" a state procedural rule has been established, the critical inquiry is whether, viewed from the time of the petitioner's later significant actions or inaction, the petitioner could be deemed to have been apprised of the procedural rule's existence. *Luberda v. Trippett*, 211 F.3d 1104, 1006-1007 (6th Cir. 2000). Because MCR 6.508(D) was enacted in 1989 and petitioner's conviction and appeals took place some time thereafter, MCR 6.508(D) was a "firmly established" procedural rule for purposes of petitioner's action. *See Luberda*, 211 F.3d at 1007; *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998).

Petitioner has asserted that his counsel was ineffective for failing to present asserted errors which were previously defaulted. To prevail on an ineffective assistance of counsel claim, a convicted defendant must demonstrate (1) that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-96 (1984). Stated another way, this court is to decide whether petitioner's trial counsel's alleged failures were such egregious errors as to constitute ineffectiveness and whether the alleged failures were materially prejudicial. The Sixth Circuit has explained:

> The question for reviewing courts is whether counsel's errors have likely undermined the reliability of, and confidence in, the result. *Lockhart v. Fretwell*, 113 S.Ct. 838, 842-43 (1993). "An error by

> counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Strickland*, 466 U.S. at 691, *quoted in Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). In evaluating petitioner's claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*), *cert. denied*, 113 S. Ct. 2969 (1993). Thus, the determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *See id.*

*West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996). In the opinion of the undersigned, petitioner has not established that he received ineffective assistance of counsel. Petitioner has not established cause and prejudice for his procedural default of these issues.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court

in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

The undersigned recommends that the court deny petitioner's application on procedural grounds of default. Under *Slack*, 529 U.S. at 484, when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a certificate. *Id.* The undersigned concludes that reasonable jurists could not debate that each of Petitioner's claims are properly dismissed. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* Petitioner has presented procedurally defaulted claims or claims that are simply matters of state law. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
    TIMOTHY P. GREELEY
    UNITED STATES MAGISTRATE JUDGE

Dated: July 13, 2009